## Case No. 4,125.

### In re DUMAHAUT et al.

[17 N. B. R. 517.][1]

District Court, S. D. New York. April 26, 1878.

BANKRUPTCY—PREVIOUS VOLUNTARY ASSIGNMENT —ACTION BY CREDITOR—COSTS AND FEES.

Where a voluntary assignment for the benefit of creditors had been executed by the bankrupts, less than three months before the commencement of bankruptcy proceedings; and where, pending the bankruptcy proceedings, and pending a proposed composition in bankruptcy, and before the election of an assignee in bankruptcy, a creditor had brought suit in the state court to compel the voluntary assignee to account, and had obtained the appointment of a receiver; and where an assignee in bankruptcy was subsequently elected, and the composition was subsequently amended so as provide that the assignee in bankruptcy should take possession of the estate in the hands of the voluntary assignee; and where a reference had been ordered by the bankrupt court, to determine how much, if anything, should be awarded to the creditor who had brought the suit, towards reimbursing his expenses in such suit, held, that such creditor would not be allowed to apply to the state court for an order directing the payment out of the estate in the hands of the voluntary assignee of the referee's fees incurred in such action.

This was a motion by the Bull's Head Bank, a creditor of the bankrupts, to modify an injunction so as to allow them to apply to the supreme court of the state for an order requiring a voluntary assignee for the benefit of creditors to pay the referee's fees, incurred in a suit brought by the Bull's Head Bank, in the supreme court, against such assignee for an accounting. On the 4th of December, 1875, Edward G. Dumahaut and George Spicer, composing the firm of E. G. Dumahaut & Co., made a general assignment, in conformity to the laws of the state of New York, to one Percival W. Clement, for the benefit of their firm creditors. On the 12th of January, 1876, and within three months after the said assignment, an involuntary petition in bankruptcy was filed against the firm of E. G. Dumahaut & Co. On the 23d of September, 1876, an adjudication was entered against the bankrupts, and at the same time an order for a first meeting of creditors to consider a proposal of composition was granted. On the 18th of October a composition meeting was held, and a composition was accepted, whereby it was provided that the debtors should pay twenty-five cents on the dol-

lar, in one, two and three years, evidenced by their promissory notes, to be secured by mortgages on certain real estate which had formerly belonged to George Spicer, one of the bankrupts. It was also provided that an assignee in bankruptcy should be elected for the purpose of cutting off intervening liens by judgment and otherwise, so that he might convey a good title to the said Spicer, and that Spicer might reconvey to him; but it was expressly provided that the estate in the hands of the voluntary assignee should not be disturbed, but should be distributed by the voluntary assignee, as if no proceedings in bankruptcy had been taken.

After this first meeting in composition had been held, but before a second meeting had been called to consider whether the composition had been accepted in compliance with the law, and whether it was for the best interest of all concerned, an action was commenced, on the 27th day of February, 1877, by the Bull's Head Bank, in the supreme court of the state of New York, against Percival W. Clement, the assignee for the benefit of creditors, to compel him to account, and in this action a receiver was appointed, and the issues were referred to a referee, who proceeded to take testimony and to take and state the accounts of the assignee. The receiver never obtained possession of the property, for the reason that the voluntary assignee lived out of the jurisdiction of the court, being a resident of Vermont. On the 28th day of March an order was made for a second meeting of creditors in the composition proceedings, and on the 12th day of May, 1877, the final order in composition was entered directing the resolution to be recorded and the statement of assets and debts to be filed. On the 13th of June, Thomas Rutherford was elected assignee in bankruptcy, in accordance with the composition resolutions, and he proceeded to conclude the transfers of real estate provided for by the composition. In the meantime, however, the voluntary assignee for the benefit of creditors had been unable to distribute the funds, as had been provided for by the composition resolution, because of the pendency of the accounting suit in the state court, and the appointment of a receiver. It became necessary, therefore, to amend the resolution of composition, in order that the bankrupt court might take possession of the estate and distribute it, free from all claim by the receiver. On the 15th of November, 1877, an order was entered calling a meeting of creditors to amend the composition. On the 5th of December a meeting was held, and the composition amended so as to provide that the assignee in bankruptcy should make demand upon Percival W. Clement, the voluntary assignee, for the estate in his hands as such assignee, and should distribute the same under the direction of the bankrupt court. This amendment was opposed by the Bull's Head Bank, but was finally confirmed by the court on the 11th day of

[1] [Reprinted by permission.]

March, 1878, the court, however, directing that the matter be referred to the register to take testimony and report to the court as to what sum, if any, should be awarded to the Bull's Head Bank to reimburse its expenses in the state court suit. The order calling the meeting to amend the composition had enjoined the Bull's Head Bank from taking any steps to remove the property, or any of it, from the custody of the voluntary assignee into the possession of the receiver. The Bull's Head Bank now comes into court, and moves that the injunction be modified so as to allow them to apply to the state court for an order directing the voluntary assignee to pay the referee's fees, incurred in the trial of the suit.

Wilson M. Powell, for the motion.

Wm. B. Hornblower, for assignee in bankruptcy and creditors opposed to motion.

CHOATE, District Judge. These bankrupts had, before the filing of the petition, made a general assignment under the state law. A composition was proposed and accepted by the creditors at the first meeting, which provided that the property assigned should continue in the hands of the state assignee and be distributed by him. After this composition was accepted by the creditors, the Bull's Head Bank commenced an action in a state court against the state assignee to compel an account and distribution. A reference was ordered and claims proved before the referee, and a receiver was appointed; but by an order of this court all proceedings in that action have been stayed and the receiver has been enjoined from taking possession of the property assigned. These proceedings necessarily led to an amendment of the terms of the composition. A motion is now made by the Bull's Head Bank, on affidavit showing that the referee threatens to sue it for his fees, stated to be five hundred dollars, to modify the injunction staying proceedings in that action so far as to allow the Bull's Head Bank to apply to the state court to have the amount of the referee's fees determined and paid out of the assigned estate. A reference has been ordered by this court and is now pending to ascertain what, if anything, should be paid to the Bull's Head Bank for its expenses incurred in that action. I think the motion should not be granted. If there is any ground on which the Bull's Head Bank can justly claim this expense which it has incurred in that action, I think it should be determined in the same way which has been adopted in reference to its other expenses. But upon the case as it stands, the action brought by the Bull's Head Bank in the state court appears to have been not beneficial to the creditors, but very injurious to them and unnecessary. Motion denied.

[NOTE. For further proceedings relating to the voluntary assignment, see Cases Nos. 4,-124 and 4,126.]